1  JINSHU ZHANG (Bar No. 166981)
   john.zhang@dentons.com
2  JAE K. PARK (Bar No. 234474)
   jae.park@dentons.com
3  DENTONS US LLP
   601 South Figueroa Street, Suite 2500
4  Los Angeles, California 90017-5704
   Telephone: (213) 623-9300
5  Facsimile: (213) 623-9924

6  William T. O'Brien (admitted *pro hac vice*)
   william.obrien@dentons.com
7  Daniel Morris (admitted *pro hac vice*)
   daniel.morris@dentons.com
8  1900 K Street, N.W.
   Washington, D.C. 20006
9  Telephone: (202) 496-7500
   Facsimile: (202) 496-7756
10
   Attorneys for Petitioner
11 Shanghai Qichengyueming Investment
   Partnership Enterprise (Limited Partnership)

12

13                UNITED STATES DISTRICT COURT

14                CENTRAL DISTRICT OF CALIFORNIA

15

| | |
|---|---|
| Shanghai Qichengyueming Investment Partnership Enterprise (Limited Partnership),<br><br>Petitioner,<br><br>v.<br><br>Jia Yueting,<br><br>Respondent. | Case No. 2:18-CV-7723 SJO (JPRx)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITIONER'S MOTION AND APPLICATION FOR RIGHT-TO-ATTACH ORDER AND WRIT OF ATTACHMENT**<br><br>Date: April 4, 2019<br>Time: 10:00 a.m.<br>Ctrm.: 690<br>Judge: Honorable Jean P. Rosenbluth<br><br>Action Filed: September 5, 2018 |

CASE NO. 2:18-CV-7723 SJO (JPRX)

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ...................................................................................... 1
II. FACTUAL AND PROCEDURAL BACKGROUND ..................................... 2
    A. The Underlying Agreements ............................................................. 2
    B. Leview Mobile's Breach ................................................................... 3
    C. The CIETAC Arbitration .................................................................. 3
    D. SQ's Petition .................................................................................... 4
    E. The Assets to be Attached ................................................................ 4
III. ARGUMENT ............................................................................................. 6
    A. A Writ of Attachment May Issue ...................................................... 7
        1. SQ's Claim Is For Money Based on a Contract ......................... 7
        2. The Amount of SQ's Claim is Readily Ascertainable ................. 7
        3. SQ's Claim Is A Commercial Claim ........................................... 7
    B. SQ Has Established Probable Validity ............................................. 8
    C. SQ Does Not Seek The Attachment For An Improper Purpose .......... 8
    D. The Assets Listed In This Application Are Subject To Attachment .... 9
IV. CONCLUSION ........................................................................................ 10

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bank of America v. Salinas Nissan Inc.*,
  207 Cal. App. 3d 260 (1989) .................................................................. 6, 9

*Greenwich Ins. Co. v. Media Breakaway, LLC*,
  No. CV08-937 CAS (CTX), 2009 WL 2231678 (C.D. Cal. July 22,
  2009), aff'd, 417 F. App'x 642 (9th Cir. 2011) ........................................... 9

*Plata v. Darbun Enter., Inc.*,
  No. 09-44, 2009 WL 3153747 (S.D. Cal. Sept. 23, 2009) ........................... 8

*Syverson v. IBM*,
  472 F.3d 1072 (9th Cir. 2007) ..................................................................... 9

*TVBI Company Ltd. v. Pham*,
  No. 17-CV-05858-SI, 2018 WL 4616283 (N.D. Cal. Sept. 26,
  2018) ......................................................................................................... 6, 9

**Statutes**

California Code of Civil Procedure
  § 481.190 ....................................................................................................... 8
  § 483.010 ....................................................................................................... 6
  § 483.010(a) ................................................................................................... 7
  § 483.010(b) ................................................................................................... 7
  § 484.090 .................................................................................................... 1, 6
  § 487.010(c)(1) ........................................................................................... 5, 9
  § 487.010(c)(6) ........................................................................................... 5, 9
  § 487.010(c)(7) ........................................................................................... 6, 9
  § 487.010(c)(8) ........................................................................................... 6, 9
  § 487.010(c)(9) ........................................................................................... 6, 9
  § 487.010(c)(10) ......................................................................................... 6, 9

Federal Arbitration Act
  Chapter 2 ....................................................................................................... 4
  Section 202 .................................................................................................... 4

**Rules and Regulations**

Federal Rules of Civil Procedure
    Rule 64 ............................................................................................................. 1, 6
    Rule 64(a) ............................................................................................................ 6

Local Rule 5.2-1 ........................................................................................................ 5

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

## I. INTRODUCTION

This action is a petition by Petitioner Shanghai Qichengyueming Investment Partnership Enterprise (Limited Partnership) ("Petitioner" or "SQ") to confirm an arbitration award issued by the China International Economic and Trade Arbitration Commission ("CIETAC"). As explained in the Petition (Dkt. No. 1), the CIETAC tribunal determined that Respondent Jia Yueting is liable as guarantor for certain loans that had not been repaid and ordered him to pay to Petitioner damages in the amount of RMB653,806,748.93 (or US$96,574,113.58),[1] plus interest,[2] and arbitration costs of US$29,678.49. Mr. Jia has not paid any of these amounts.

Given the size of the award and Mr. Jia's history of refusing to honor financial obligations, SQ makes this application under Federal Rule of Civil Procedure 64 for a writ of attachment in the amount of **US$100,000,000.** SQ's application for a writ of attachment should be granted because it can establish each of the requirements under California Code of Civil Procedure section 484.090. Specifically: (1) SQ is seeking attachment to secure recovery on a claim upon which attachment may issue (*i.e.*, an unsecured claim for money based upon a contract, for an ascertainable amount greater than US$500, arising from Mr. Jia's commercial activity); (2) SQ can establish the probable validity of its claim; (3) SQ is seeking attachment solely for the purpose of securing satisfaction of the potential judgment; and (4) the amount to be secured is greater than zero.

In addition, the equities weigh in SQ's favor. Mr. Jia is one of the wealthiest individuals in the world. He appeared on Forbes's list of Billionaires in 2017 with an estimated net worth of US$3.5B. He used that wealth to induce the loans that were the subject of the CIETAC arbitration, personally guaranteeing the debtor's repayment obligations. SQ is only asking that he honor that guarantee.

---

[1] The exchange rate of US$1 = RMB6.77 is applied, which was the rate published on Bloomberg's website on February 15, 2019.
[2] On July 8, 2019—the date of the hearing on Petitioner's motion for confirmation of the CIETAC award—the approximately accumulated interest will be RMB56,098,746.01 (or US$8,286,373.12).

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

1   Accordingly, SQ respectfully requests that the Court grant this application.

2   **II.    FACTUAL AND PROCEDURAL BACKGROUND**

3       **A.    The Underlying Agreements**

On June 3, 2015, SQ entered into a Convertible Note Purchase Agreement (the "Purchase Agreement") with Leview Mobile Ltd. ("Leview Mobile"); Leview Holding (Beijing) Limited ("Leview Holding"); Le Ltd.; Lesai Mobile Technology (Beijing) Co., Ltd.; QC Investment Ltd.; and Mr. Jia.  The Purchase Agreement provided that QC Investment Ltd. ("QC Investment") would purchase a convertible note in the amount of US$75,000,000 issued by Leview Mobile ("Convertible Note I"). (Petition at ¶ 8, Dkt. No. 1.)  On that same day, the parties to the Purchase Agreement entered into a supplemental agreement ( "Supplemental Agreement I") providing that the redemption payment due under the Purchase Agreement would be paid in RMB, at the US dollar exchange rate published by the People's Bank of China on the closing date.  (Petition at ¶ 11, Dkt. No. 1.)  Also on that same day, Leview Holding and Mr. Jia provided to QC Investment and Petitioner a letter of guarantee ("Letter of Guarantee I"), providing, *inter alia*, that, they were irrevocable joint guarantors for Leview Mobile's payment obligations and, in the event of Leview Mobile's failure to timely perform its repayment obligations, QC Investment may transfer its rights under Purchase Agreement, Convertible Note I, and Supplemental Agreement I to Petitioner.  (Petition at ¶ 12, Dkt. No. 1.)

Pursuant to the terms of Convertible Note I, Supplemental Agreement I, and Letter of Guarantee I, on July 7, 2015, QC Investment paid US$75,000,000 to Leview Mobile.  (Petition at ¶ 13, Dkt. No. 1.)

That same day, the parties entered into a second supplemental agreement ("Supplemental Agreement II") providing that QC Investment would purchase a second convertible note, with a principal amount of US$5,000,000 ("Convertible Note II"). (Petition at ¶ 14, Dkt. No. 1.)  Leview Holding and Mr. Jia again provided letter of guarantee ("Letter of Guarantee II") with the same terms as Letter

of Guarantee I but as to the obligations arising from Convertible Note II.  (Petition at ¶ 15, Dkt. No. 1.)  And on August 17, 2015, QC Investment paid Leview Mobile US$5,000,000.  (Petition at ¶ 16, Dkt. No. 1.)

### B. Leview Mobile's Breach

Starting in March 2017, QC Investment attempted to secure the redemption payments due under the Convertible Notes from Leview Mobile.  (Petition at ¶ 17, Dkt. No. 1.)  On June 1, 2017, QC Investment, through its counsel, sent Leview Mobile a redemption notice demanding redemption of the two convertible notes with a redemption price for Convertible Note I of US$97,500,000, i.e., RMB606,635,250, and a redemption price for Convertible Note II of US$6,500,000, i.e., RMB41,676,700. (Petition at ¶ 19, Dkt. No. 1.)  QC Investment also notified Leview Holding and Mr. Jia that QC Investment had sent the redemption notice to Leview Mobile and demanded that Leview Holding and Mr. Jia urge Leview Mobile to make timely repayment.  (Petition at ¶ 20, Dkt. No. 1.)  On July 4, 2017, QC Investment transferred its rights under the Purchase Agreement, Convertible Note I, Convertible Note II, Letter of Guarantee I, Letter of Guarantee II, and the other agreements to Petitioner, and Petitioner initiated an arbitration of the repayment dispute.  (Petition at ¶ 21, Dkt. No. 1.)

### C. The CIETAC Arbitration

Petitioner initiated arbitration with CIETAC, and on October 19, 2017, CIETAC sent a notice to all parties that the arbitral panel had been constituted. (Petition at ¶¶ 22-26, Dkt. No. 1.)  The arbitration hearing was held on December 20, 2017, with both sides represented by counsel, who presented their respective clients' case and responded to the panel's questions. (Petition at ¶¶ 28-31, Dkt. No. 1.)  On May 9, 2018, the arbitration panel rendered its Final Award, generally in favor of Petitioner and against Leview Holding and Mr. Jia.  (Petition at ¶ 32, Dkt. No. 1.)  The Final Award ordered that Leview Holding and Mr. Jia pay to SQ the following amounts:

- Redemption prices for the convertible notes at issue in the arbitration (including principal and interest) of RMB648,284,650;
- Interest of 4.35% from July 7, 2017 through the date of actual payment on the RMB606,635,250 principal of Convertible Note I;
- Interest of 4.35% from August 17, 2017 through the date of actual payment on the RMB41,649,400 principal of Convertible Note II;
- SQ's attorney fees of RMB1,000,000;
- SQ's asset attachment fees of RMB5,000;
- SQ's asset attachment bond costs of RMB972,467.93;
- SQ's arbitration fee of RMB3,544,631; and
- SQ's arbitrator compensation in the amount of US$29,678.49.

The arbitration panel also rejected all other claims, and ordered that the above sums be paid within five days. (Petition at ¶ 1, Dkt. No. 1.) As of the date of this application, Mr. Jia has not paid any of these sums.

### D. SQ's Petition

SQ initiated this action to enforce the CIETAC arbitration award against Mr. Jia, who has substantial California-based assets. SQ seeks confirmation of the CIETAC arbitration award under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention") as implemented in Chapter 2 of the Federal Arbitration Act. The New York Convention has been implemented in the United States by Chapter Two of the Federal Arbitration Act. The Final Award is governed by the New York Convention because it was rendered in China, another contracting party, and satisfies the requirements of Section 202 of the Federal Arbitration Act.

### E. The Assets to be Attached

SQ seeks to attach the following properties of Mr. Jia:

- All of Mr. Jia's real property interests, except leasehold interests with

unexpired terms of less than one year,[3] including but not limited to:

- ▪ ███████████,[4] Rancho Palos Verdes, California 90275 (Assessor's Parcel Number: ███████████████████████);[5]
- ▪ 15 Marguerite Drive, Rancho Palos Verdes, California 90275 (Assessor's Parcel Number: 7582-002-013);
- ▪ 19 Marguerite Drive, Rancho Palos Verdes, California 90275 (Assessor's Parcel Number: 7582-001-016)
- ▪ Vacant land on Marguerite Drive, Rancho Palos Verdes, California 90275 (Assessor's Parcel Number: 7582-001-023);
- ▪ Vacant land on Marguerite Drive, Rancho Palos Verdes, California 90275 (Assessor's Parcel Number: 7582-001-024);
- ▪ Vacant land on Marguerite Drive, Rancho Palos Verdes, California 90275 (Assessor's Parcel Number: 7582-001-026);
- ▪ 91 Marguerite Drive, Rancho Palos Verdes, California 90275 (Assessor's Parcel Number: 7582-002-016);[6] and
- ▪ 18455 South Figueroa Drive, Los Angeles, California 90248 (standardized address: 18455 South Figueroa Street, Gardena, California 90248-4503, Los Angeles County) (Assessor's Parcel Number: 7339-008-034).

- All of Mr. Jia's accounts receivable, chattel paper and general intangibles arising out of his trade, business or profession.
- Any final money judgments arising out of Mr. Jia's conduct of a trade, business or profession.[7]
- All of Mr. Jia's money located at any of the above properties and his

---

[3] Cal. Code Civ. Pro § 487.010(c)(1)
[4] Redacted pursuant to L.R. 5.2-1.
[5] Redacted pursuant to L.R. 5.2-1.
[6] These real estate properties are collectively referred to as "RPV Property."
[7] Cal. Code Civ. Pro § 487.010(c)(6).

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

businesses.[8]

- All of Mr. Jia's deposit accounts, except for an aggregate total of $1,000 from such accounts.[9]
- All of Mr. Jia's negotiable documents of title, instruments and securities.[10]
- Mr. Jia's direct or indirect equity interest in any entity, including, without limitation, Faraday Future LLC, Faraday & Future Inc. and Faraday SPE, LLC.[11]

## III. ARGUMENT

Under Federal Rule of Civil Procedure 64, "[e]very remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment." Fed. R. Civ. P. 64(a). A writ of attachment is such a remedy available in California.

Under California Code of Civil Procedure section 484.090, a court may issue a writ of attachment when the court makes the following findings: (a) the claim upon which attachment is based is one upon which an attachment may be issued (i.e., the claim must comply with California Code of Civil Procedure section 483.010); (b) the plaintiff has established the probable validity of the claim upon which attachment is based; (c) the attachment is not sought for an improper purpose (*i.*e., for a purpose other than the recovery of the claim); and (d) the amount to be secured by attachment is greater than US$0.

The fourth finding is readily established because SQ's claim and the amount to be secured is for an amount far greater than US$0. SQ can just as easily establish the other three.

---

[8] Cal. Code Civ. Pro § 487.010(c)(7).
[9] *Ibid*.
[10] Cal. Code Civ. Pro § 487.010(c)(8)-(10).
[11] SQ may broadly describe Mr. Jia's property sought to be attached, without specifically describing the same. *Bank of America v. Salinas Nissan Inc.*, 207 Cal. App. 3d 260, 267-78 (1989); *TVBI Company Ltd. v. Pham*, No. 17-CV-05858-SI, 2018 WL 4616283, at *6 (N.D. Cal. Sept. 26, 2018).

### A.     A Writ of Attachment May Issue

A writ of attachment and right to attach order may be issued when: (1) the action is based on a claim for money, based on a contract; (2) the amount of the claim is fixed or readily ascertainable, not less than US$500; and (3) the claim is a commercial claim. Cal. Code Civ. Proc. § 483.010(a). Also, SQ's claim is unsecured. Cal. Code Civ. Proc. § 483.010(b).

#### 1.     SQ's Claim Is For Money Based on a Contract

SQ's claim is for money from several inter-related written commercial contracts that were the subject of the CIETAC arbitration: Convertible Note I, and the related Supplemental Agreement I and Letter of Guarantee I; and Convertible Note II, and the related Supplemental Agreement II and Letter of Guarantee II. SQ is a judgment creditor of the CIETAC arbitration award, which is a money award resulting from Mr. Jia's failure to fulfill his obligations under the two letters of guarantee.

#### 2.     The Amount of SQ's Claim is Readily Ascertainable

Further, the claim amount is readily ascertainable, and far exceeds $500. Cal. Code Civ. Proc. § 483.010(a). Not only does the Convertible Note I, Supplemental Agreement I, Convertible Note II, and Supplemental Agreement II identify the specific loan amounts, the Final Award specifies the exact amount of Mr. Jia's liability and the exact rate of interest to be applied until payment is made.

The Final Award was rendered in two currencies: Chinese Yuan and US Dollar. The Chinese Yuan amount includes redemption prices for the convertible notes, interest, attorney fees, and arbitration costs, but the arbitrators' compensation component was awarded in US Dollar. As of the date of this filing, inclusive of interest, the amounts are RMB660,416,892.93 (or US$97,505,852.07) plus US$29,678.49 or US$97,535,530.56.

#### 3.     SQ's Claim Is A Commercial Claim

SQ's claim, and Mr. Jia's liability, arises out of the conduct of business.

Preliminarily, Mr. Jia was a party to the Purchase Agreement, which provided that QC Investment, as investor in the borrower's business, would purchase Convertible Note I. (Purchase Agreement, Dkt. 1-2 at 102-103.) Further, the loan was made so that Leview Mobile may "fund (a) the expansion of the business of the Company [Leview Mobile]." (Purchase Agreement at § 2.3, Dkt. 1-2 at 111.) Mr. Jia made the guarantees to secure this commercial loan, not a personal or consumer loan.

### B. SQ Has Established Probable Validity

A claim has "probable validity" where "it is more likely than not that the plaintiff will obtain a judgment against the defendant on the claim." Cal. Code Civ. Proc. § 481.190. In other words, SQ must establish a *prima facie* case. *See Plata v. Darbun Enter., Inc.*, No. 09-44, 2009 WL 3153747, at *4 (S.D. Cal. Sept. 23, 2009). SQ can easily meet this standard because it is simply seeking to conform a commercial arbitration award which was rendered after a hearing where all parties, including Jia, had an opportunity to be heard and present evidence and argument in support of their respective positions. The CIETAC tribunal has already made all of the necessary findings of fact and law and issued the Final Award. The Final Award is governed by the New York Convention because both the US and China are signatories to it. Moreover, there are no grounds to refuse or delay confirmation: all parties, including Mr. Jia, submitted their dispute to CIETAC arbitration pursuant to a written arbitration agreement; they had notice of the appointment of the arbitration panel and participated in the arbitration; the Final Award was based on the issues submitted to arbitration and there were no defects in the arbitration procedure; the subject matter of the underlying dispute (breach of obligations under the notes and guarantees) was appropriate for arbitration; and enforcement of the Final Award is consistent with public policy. As such, the Court should confirm the award.

### C. SQ Does Not Seek The Attachment For An Improper Purpose

Finally, SQ does not seek a writ of attachment for any purpose other than

recovery on the claim upon which the attachment is to issue. (*See* Declaration of Yan Chengbin at 3-6.)

### D. The Assets Listed In This Application Are Subject To Attachment

California Code of Civil Procedure provides that the following assets of Mr. Jia are subject to attachment: real property interests, except leasehold interests with unexpired terms of less than one year; accounts receivable, chattel paper and general intangibles arising out of his trade, business or profession; final money judgments arising out of Mr. Jia's conduct of a trade, business or profession; money located at any of the above properties and his businesses; deposit accounts, except for an aggregate total of $1,000 from such accounts; negotiable documents of title, instruments and securities; and direct or indirect equity interest in any entity, including, without limitation, Faraday Future LLC, Faraday & Future Inc. and Faraday SPE, LLC (collectively, "Faraday").[12] Cal. Code Civ. Pro § 487.010(c) subd. (1), (6), (7), (8), (9) and (10).

The RPV Properties listed above and Mr. Jia's 33% equity share of Faraday are subject to attachment because Mr. Jia is the ultimate beneficial owner of these assets, notwithstanding the fact that he has attempted to disguise the same. (*See generally,* Declaration of Jae K. Park ("Park Dec.") at 2-4; Award of Emergency Arbitrator in Hong Kong International Arbitration Centre Case No. HKIAC/A18176 ("HK Arbitration Award") Ex. 1 to Park Dec. at ¶ 47, 48, 100-102, 105, 108.)[13] For example, Mr. Jia has a 33-percent interest in an entity named Smart King Ltd., which is the sole owner of Faraday. (*See* HK Arbitration Award,

---

[12] SQ may broadly describe Mr. Jia's property sought to be attached, without specifically describing the same. *Bank of America v. Salinas Nissan Inc.*, 207 Cal. App. 3d 260, 267-78 (1989); *TVBI Company Ltd. v. Pham*, No. 17-CV-05858-SI, 2018 WL 4616283, at *6 (N.D. Cal. Sept. 26, 2018).

[13] The determinations and findings of fact in the Hong Kong arbitration regarding his beneficial interest in Faraday is binding on Mr. Jia because Mr. Jia had a full and fair opportunity to litigate the issue in the arbitration, the issue was actually litigated and decided. *Syverson v. IBM*, 472 F.3d 1072 (9th Cir. 2007); *Greenwich Ins. Co. v. Media Breakaway, LLC*, No. CV08-937 CAS (CTX), 2009 WL 2231678, at *1 (C.D. Cal. July 22, 2009), aff'd, 417 F. App'x 642 (9th Cir. 2011).

Ex. 1 to Park Dec. at ¶ 47.) While Mr. Jia transferred title to his 33-percent interest to an acquaintance named Lian Bossert, Mr. Jia retained beneficial ownership of his 33-percent interest in Smart King and, in turn, of his 33% interest in Faraday. (*Id.* at ¶¶ 59, 100–102, 108.) Thus, Mr. Jia's interest in Faraday and Faraday's real estate holdings is subject to attachment. Likewise, Mr. Jia was the CEO of Ocean View Drive, the entity which holds title to the RPV Properties, until 2017, when Lian Bossert's mother, Ms. Chaoying Deng, became the CEO. (Ocean View Drive's 2016 Statement of Information, Ex. 2 to Park Dec.; Ocean View Drive's 2017 Statement of Information, Ex. 3 to Park Dec.) One of the RPV Properties is Mr. Jia's residence, where Petitioner unsuccessfully attempted to personally serve Mr. Jia with the summons. (Proof of Service, Dkt. 19.) Thus, Mr. Jia's interest in the RPV Properties is subject to attachment.[14]

## IV. CONCLUSION

For the above-mentioned reasons, SQ respectfully requests that this Court grant this application for a writ of attachment in the amount of **$100,000,000** inclusive of attorney fees and costs.

Dated: February 20, 2019            DENTONS US LLP

By: */s/ Jae K. Park*
    Jinshu Zhang
    Jae K. Park

Attorneys for Petitioner
Shanghai Qichengyueming Investment
Partnership Enterprise (Limited
Partnership)

109992956\V-2

---

[14] To the extent there is any ambiguity as to Mr. Jia's ownership of these assets, which there is not, Mr. Jia may be protected against improper attachment through an undertaking.