JINSHU ZHANG (Bar No. 166981)
john.zhang@dentons.com
JAE K. PARK (Bar No. 234474)
jae.park@dentons.com
DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California  90017-5704
Telephone:   (213) 623-9300
Facsimile:   (213) 623-9924

William T. O'Brien (admitted *pro hac vice*)
william.obrien@dentons.com
Daniel Morris (admitted *pro hac vice*)
daniel.morris@dentons.com
1900 K Street, N.W.
Washington, D.C. 20006
Telephone: (202) 496-7500
Facsimile: (202) 496-7756

Attorneys for Petitioner
Shanghai Qichengyueming Investment
Partnership Enterprise (Limited Partnership)

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Shanghai Qichengyueming Investment Partnership Enterprise (Limited Partnership),<br><br>Petitioner,<br><br>v.<br><br>Jia Yueting,<br><br>Respondent. | Case No. 2:18-CV-7723 SJO (JPRx)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITIONER'S APPLICATION FOR WRIT OF EXECUTION**<br><br>Action Filed:  September 5, 2018 |

## I. INTRODUCTION

Petitioner Shanghai Qichengyueming Investment Partnership Enterprise (Limited Partnership) ("Petitioner" or "SQ") brought this action under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, codified under the Federal Arbitration Act, 9 U.S.C. § 201 *et seq.*, to confirm an arbitration award issued by the China International Economic and Trade Arbitration Commission ("CIETAC"). On July 12, 2019, the Court issued a Consent Judgment in favor of SQ. (Dkt. No. 37.) The Consent Judgment is a money judgment and immediately payable.

On August 6, 2019, Petitioner applied for a Writ of Execution for the amount of the judgment plus accrued interest. (Dkt. No. 38.) The Court issued a Notice of Deficiency because the amounts in the Consent Judgment is listed in RMB while the application for the Writ of Execution listed amounts in US currency. (Dkt. No. 39.) Thus, Petitioner is re-applying for a Writ of Execution with this memorandum explaining the basis of the conversion of the RMB amounts into USD.

## II. FACTUAL BACKGROUND

### A. The Terms of the Final Award

As explained in the Petition (Dkt. No. 1), in its May 9, 2018, Final Award, the CIETAC:

1. Ordered the respondents to pay to SQ redemption prices for the two convertible notes ("Convertible Note I" and "Convertible Note II") at issue in the arbitration (including principal and interest) of RMB648,284,650;

2. Ordered the respondents to pay to SQ default interest of 4.35% from July 7, 2017 through the date of actual payment on the RMB606,635,250 principal of Convertible Note I;

3. Ordered the respondents to pay to SQ default interest of 4.35% from August 17, 2017 through the date of actual payment on the

- 2 -

MEM. OF PTS & AUTH. IN SUP. OF
PETITIONER'S APPLICATION FOR WRIT
OF EXECUTION

        RMB41,649,400 principal of Convertible Note II;

4. Ordered the respondents to pay to SQ its attorney fees in the amount of RMB1,000,000;

5. Ordered the respondents to pay to SQ its asset attachment fees in the amount of RMB5,000, and the premium SQ paid for an asset attachment bond in the amount of RMB972,467.93;

6. Ordered the respondents to reimburse SQ the arbitration fee of RMB3,544,631;

7. Ordered the respondents to reimburse SQ arbitrator compensation in the amount of US$29,678.49;

8. Ordered that payment of all such amounts be made by the respondents within five days; and

9. Rejected all other claims.

**B.  The Consent Judgment**

The Consent Judgment Ordered Respondent Jia Yueting to pay to SQ:

1. All amounts due under the CIETAC Final Award in either Chinese RMB or U.S. Dollar as determined by the exchange rate prevailing on the date of payment;

2. Prejudgment interest at the contractual rate of 4.35%; and

3. Post-judgment interest pursuant to 28 U.S.C. § 1961.  (Dkt. No. 37.)

**III.  CALCULATION OF AMOUNT OF JUDGMENT**

    **A.  AMOUNT DUE UNDER CIETAC FINAL AWARD**

As explained in the Petition, the underlying arbitration involved money owed under two Convertible Notes purchased in US Dollars, and the CIETAC panel awarded:  (1) the principal sums due under the Convertible Notes; (2) attorney fees; (3) attachment fees; (4) bond costs; (5) arbitration fees; and (6) arbitrator's compensation.

    Specifically, on July 7, 2015, QC Investment paid US$75,000,000 to

purchase Convertible Note I. (Petition at 8, 13, Dkt. No. 1.) The redemption date for Convertible Note I was July 7, 2017. (Certified Translation of Final Award at 70, Dkt. 1-2.) And on August 17, 2015, QC Investment paid US$5,000,000 to purchase Convertible Note II, with a redemption date of August 17, 2017. (Petition at 16; Certified Translation of Final Award at 70, Dkt. 1-2.) The CIETAC panel determined that the principal amount due on Convertible Note I was RMB606,635,250, and the principal amount due on Convertible Note II was RMB41,649,400. Prejudgment interest of 4.35% accrued on Convertible Note I starting on July 7, 2017 and on Convertible Note II starting on August 17, 2017. The total award under the CIETAC Final Award was RMB677,245,201.73 plus US$29,678.59 as follows:

(1) Convertible Note I (in RMB): 628,758,323.46

| | | | |
|---|---|---|---|
| A | Principal | | 606,635,250 |
| B | Interest Rate | | 4.35% |
| C | Time (306/365) | | 0.838356164 |
| D | Accrued Interest (A x B x C) | | 22,123,073.46 |
| E | Total Due (A + D) | | 628,758,323.46 |

(2) Convertible Note II (in RMB): 42,964,779.34

| | | | |
|---|---|---|---|
| F | Principal | | 41,649,400 |
| G | Interest Rate | | 4.35% |
| H | Time (265/365) | | 0.726027397 |
| I | Accrued Interest (F x G x H) | | 1,315,379.34 |
| J | Total Due (F + I) | | 42,964,779.34 |

(3) Attorney Fees (in RMB): 1,000,000

(4) Attachment Fees (in RMB): 5,000

(5) Bond Costs (in RMB): 972,467.93

(6) Arbitration Fees (in RMB): 3,544,631

(7) Arbitrator's Compensation (in USD): US$29,678.49

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

1  The Court's Consent Judgment awarded SQ the above sums in plus
2  prejudgment interest at the contractual rate of 4.35% and postjudgment interest.

3  **B.     Conversion of Final Award to US Dollar**

4  According to the reports published by the Federal Reserve, the effective
5  exchange rate for RMB to US Dollar on potentially relevant dates are as follows:[1]

| Date/Event | Rate |
| --- | --- |
| May 9, 2018 – Date of Final Award | 6.3585 |
| July 12, 2019 – Date of Judgment | 6.8796 |

9  The Supreme Court has set forth two rules with respect to the date that
10 should be used to determine the applicable exchange rate when converting an award
11 of foreign currency into dollars.  Under the first rule, known as the "breach day
12 rule," the applicable exchange rate is the one that was in effect on the date that the
13 defendant breached its obligations to the plaintiff.  *Hicks v. Guinness*, 269 U.S. 71
14 (1925).  Under the second rule, known as the "judgment day rule," the applicable
15 exchange rate is the prevailing rate on the date that the court enters judgment for the
16 plaintiff.  *Die Deutsche Bank Fialiale Nurnberg v. Humphrey*, 272 U.S. 517 (1926).
17 The "breach day rule" applies if the cause of action arose under domestic law, and
18 the exchange rate from the date the cause of action accrued should be used.  *See*
19 *Hicks*, 269 U.S. at 80–81; *see also¸ Cont'l Transfert Technique Ltd. v. Fed. Gov't of*
20 *Nigeria*, 932 F. Supp. 2d 153, 159 (D.D.C. 2013), *aff'd*, 603 F. App'x 1 (D.C. Cir.
21 2015).

22 The breach day rule applies here because SQ's right to bring this Petition is
23 derived "entirely from U.S. law, namely the right to have an arbitral award that
24 meets certain criteria be confirmed by a United States district court" under the
25 Federal Arbitration Act.  *Cont'l Transfert*, 932 F. Supp. 2d at 161 (holding that
26 notwithstanding the choice of law relevant to the underlying arbitration, the

---

[1] (Historical Rates for the RMB, available at https://www.federalreserve.gov/releases/h10/hist/dat00_ch.htm (last visited 8/20/19).

judgment creditor's cause of action arises exclusively under United States law and the "breach day" rule therefore applies). Also, where currency rate fluctuations and delay in the debtor's payment has caused prejudice to the creditor, as is the case here for SQ, courts consider currency exchange rate fluctuations to apply the exchange rate that best makes the creditor whole where the debtors delay has caused prejudice. *See* the Restatement (Third) of Foreign Relations Law § 823 (1987) (providing that, "the conversion from foreign currency to dollars is to be made at such rate as to make the creditor whole and to avoid rewarding a debtor who has delayed in carrying out the obligation" and if the "foreign currency has depreciated since the injury or breach, judgment should be given at the rate of exchange applicable on the date of injury or breach…."); *see also*, *G.E. Transp. S.P.A. v. Republic of Albania*, 693 F. Supp. 2d 132, 139-40 (D.D.C. 2010).

Thus, the exchange rate in effect on the date of the Final Award of 6.3585:1 applies. Applying this exchange rate, the Final Award of RMB677,245,201.73 plus US$29,678.59 amounts to US$106,539,893.54 ([RMB677,245,201.73/6.3585] + US$29,678.59). If the judgment day rule applies—which it should not—the applicable exchange rate is 6.8796:1, and the award in US dollars is calculated to be US$98,472,204.57.[2]

Moreover, the amount of the judgment may be converted to US Dollars by applying the breach day rule for the purpose of Petitioner's right to enforce the judgment and seek this writ of execution, notwithstanding the Consent Judgment's language that the Respondent may pay the judgment "either in Chinese RMB or in U.S. dollars as determined by the exchange rate prevailing on the date that each payment is made" because otherwise, the judgment would be illusory and Petitioner

---

[2] In *Linley Investments v. Jamgotchian*, No. LACV1100724JAKRZX, 2014 WL 12665812, (C.D. Cal. Apr. 16, 2014), Judge Kronstadt incorrectly concluded that the judgment day rule applied because the underlying contract dispute arose under a contract executed and performed in Ireland, payment was due to Irish petitioners, and the arbitration award was payable in Euros. *Id* at *4-5. However, Judge Krostadt failed to account for the fact that the claim and the right to enforce the arbitration award is under American law—the Federal Arbitration Act. *Continental Transfert Technique Ltd.*, 932 F. Supp.2d at 160-61.

MEM. OF PTS & AUTH. IN SUP. OF
PETITIONER'S APPLICATION FOR WRIT
OF EXECUTION

would have no ability to enforce it, since the exchange rate fluctuates daily and it is impossible to convert RMB to US Dollar each day any property is recovered to satisfy the judgment amount. Rather, the language permitting Respondent to pay in either Chinese RMB at the exchange rate prevailing on the date of payment applies only to voluntary payment by the Respondent. For example, if on August 16, 2019, Respondent paid the entire amount of the judgment in full, the applicable exchange rate would be RMB7.0413.

## IV. CONCLUSION

As explained above, the full amount of the Final Award, converted to US Dollar, is US$106,539,893.54. Prejudgment interest accrued, at 4.35% from the date of the Final Award (May 9, 2018) to the date of the Consent Judgment (July 12, 2019), is calculated as follows:

| Principal | Rate | Time | Interest |
|---|---|---|---|
| $106,539,893.54 | 4.35% | 424 days/365 | $5,383,621.36 |

Thus, the total amount of the judgment, inclusive of prejudgment interest, converted to US Dollar, is $111,923,514.90.

Further, post-judgment interest at 1.97% is $241,632.14, as follows:

| Principal | Rate | Time | Interest |
|---|---|---|---|
| $111,923,514.90 | 1.97% | 40 days/365 | $241,632.14 |

Dated: August 21, 2019

DENTONS US LLP

By: /s/ Jae K. Park
    Jinshu Zhang
    Jae K. Park

Attorneys for Petitioner
Shanghai Qichengyueming Investment Partnership Enterprise (Limited Partnership)

US_Active\113040000\V-2